**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 12 C 7101 |
| | ) | |
| FERNANDO DELGADO-CORTES | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On March 2, 2011, Fernando Delgado-Cortes ("Delgado") pled guilty to a charge of conspiracy with intent to distribute 500 grams or more of a controlled substance. At the change of plea hearing, the government advised the Court and Delgado that it was the government's position that Delgado was accountable for an additional six kilograms of cocaine on top of the three kilograms of cocaine for which Delgado was admitting responsibility. On June 13, 2011, the Court found that Delgado was accountable for the additional six kilograms of cocaine, which raised the mandatory minimum sentence. The Court sentenced Delgado to 120 months' imprisonment, the mandatory minimum.

Delgado has filed a motion under 28 USC § 2255, alleging that his counsel rendered ineffective assistance in connection with the guilty plea and sentencing. For the reasons stated below, the Court denies Delgado's motion.

### Facts

**1. Delgado's arrest**

In September 2009, Delgado made an agreement with a government informant to sell the informant three kilograms of cocaine. After the shipment of cocaine arrived, the

informant met with Delgado and was taken to a back room in a tire shop to complete the transaction. After Delgado and another co-conspirator, Gregorio Soberanis-Campos ("Soberanis"), showed the cocaine to the informant, the informant left the tire shop, ostensibly to get the money to pay for the cocaine.

In fact, the informant signaled law enforcement agents. Agents of the Drug Enforcement Administration (DEA) entered the tire shop and arrested Delgado, Soberanis, and the tire shop owner, Jesus Sanchez-Cebrero ("Sanchez"). The agents conducted a search of the premises. They discovered three kilograms of cocaine located in a room hidden by rows of tires, six kilograms of cocaine located in the rear seat of a Toyota Tacoma, and twenty-one kilograms of cocaine and nine kilograms of heroin located inside the trap compartment of a Ford Explorer.

After receiving *Miranda* warnings, Sanchez agreed to talk with DEA agents. Sanchez said he knew that Delgado and Soberanis were conducting a three-kilogram transaction with an unknown person because Delgado had asked for Sanchez's permission to conduct the transaction at the tire shop. Sanchez also told the agents that Delgado had asked him to store the six kilograms of cocaine that were found inside the Toyota Tacoma. Sanchez also admitted that he knew the Ford Explorer contained drugs and stated that the Explorer had been dropped off by a man he referred to as "El Licensiado."

## 2. Court proceedings

On March 2, 2011, Delgado pled guilty to a charge of conspiracy with intent to distribute 500 grams or more of a controlled substance. During the change of plea hearing, he admitted to possessing approximately three kilograms of cocaine – the

cocaine found in the room at the tire shop.

At the change of plea hearing, the prosecutor stated that the government's position was that Delgado was also accountable for the six kilograms of cocaine found in the Toyota Tacoma. For this reason, the Court explained to Delgado at the plea hearing that if the prosecutor could demonstrate that Delgado was accountable for the additional cocaine, then the mandatory minimum sentence would be ten years (120 months) instead of the five years (60 months) that would apply if Delgado was accountable only for the approximately three kilograms to which he had admitted. Delgado stated that he understood this.

At Delgado's sentencing hearing on June 13, 2011, the Court found that the government had proved by a preponderance of the evidence that the six kilograms from the Toyota Tacoma were attributable to Delgado. The Court imposed the mandatory minimum sentence of 120 months.

Delgado appealed his sentence on the basis that the government did not meet its burden to prove by a preponderance of the evidence that Delgado was responsible for the additional six kilograms of cocaine found in the Toyota Tacoma. *United States v. Delgado-Cortes*, 488 F. App'x 132 (7th Cir. 2012). Delgado specifically argued that this Court had erred in relying on Sanchez's statement despite concerns about Sanchez's credibility. *Id.* at 133. Delgado also argued that the Court erred by not requiring corroboration of Sanchez's statement that the drugs belonged to Delgado. *Id.* Delgado also appeared to argue that the Court's reasoning supporting its reliance on Sanchez's statement was speculative and that the Court had ignored evidence regarding Sanchez's fingerprint. *Id.* On July 9, 2012, the Seventh Circuit affirmed the sentence,

holding that this Court had not clearly erred and that evidence supported the Court's conclusion that Delgado was responsible for conspiring to distribute nine kilograms of cocaine. *Id.*

## Background

Delgado argues that his attorney rendered ineffective assistance of counsel. First, Delgado contends that his attorney failed to adequately challenge the evidence of the additional six kilograms of cocaine being attributable to Delgado (Ground One). Delgado also argues that his attorney was ineffective in that he failed to explain to Delgado the plea agreement, his options, or the possible outcomes and because the attorney "promised" Delgado a sentence of no more than 60 months if he signed the plea agreement (Ground Two).

In order for a defendant to prove that he was deprived of his constitutional right to effective assistance of counsel, the defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show that counsel's performance fell below an objective standard of reasonableness, the defendant must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id.* The defendant must identify acts or omissions by his attorney that were not within professional norms considering all of the circumstances. *Id.* Because it is "all too tempting for a defendant to second-guess counsel's assistance after… [an] adverse sentence," a fair assessment of attorney performance requires that "every effort be made to eliminate the distorting effects of hindsight." *Id.* at 689.

In order to show prejudice as a result of counsel's ineffectiveness, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 686. To satisfy the prejudice requirement in a case in which a defendant challenges his attorney's conduct in connection with a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In a case in which the defendant contends that his lawyer rendered ineffective assistance in connection with sentencing, the defendant must show a reasonable probability that he would have received a lesser sentence. *See Glover v. United States*, 531 U.S. 198, 203 (2001).

## Discussion

### Ground One: failure to challenge evidence and testimony

**1. Sanchez's statements**

Delgado alleges that at sentencing, his counsel failed to challenge the credibility of statements made by co-defendant Sanchez. The record shows otherwise. Delgado's attorney, Kevin Milner, did in fact challenge Sanchez's credibility in connection with the government's argument that the Court should hold Delgado accountable for the additional six kilograms of cocaine that were found in the Tacoma. June 13, 2011 Tr. at 5. Milner argued that Sanchez's attribution of the six kilograms to Delgado was an attempt to minimize his own responsibility by pointing the finger at someone else. *Id.*

Upon further questioning from the Court, Milner continued to argue that Sanchez's statements were unreliable, and he disputed the suggestion that Sanchez's statements might be worthy of some credence because he was also inculpating himself at the same time he was pointing the finger at Delgado. *Id.* at 7.

In his section 2255 motion, Delgado does not identify anything further that Milner reasonably could have done that would have undermined Sanchez's credibility. Delgado contends that Milner should have used evidence regarding Sanchez's fingerprint to attack Sanchez's credibility. There is no basis to believe that this would have made any difference. As the court of appeals stated in its order affirming Delgado's sentence on appeal: "Sanchez admitted that he was involved with the six kilograms in the Tacoma, and that he touched one of the packages at some point does not disprove Delgado's ownership." *Delgado-Cortes*, 488 F. App'x at 133.

**2. Delgado's "self-incriminating" statements**

Delgado also contends that his counsel allowed an unreliable self-incriminating statement to connect him to the additional six kilograms of cocaine. This point concerns the government's reliance on Delgado's pre-arrest conversations with the informant in which Delgado mentioned his expectation to receive future shipments. Contrary to Delgado's argument, however, Milner did attempt to refute the statement. Specifically, Milner argued: "The government in its submission directs the Court to the fact there are conversations about other deals that will take place in the future, that I'm expecting a shipment, but nothing that deals with the particular amount. In other words, there's no way to know that the three was or was not the extent of the shipment as in regard to Mr. Delgado." June 13, 2011 Tr. at 5. In short, Milner did attempt to minimize the

6

statement's significance.  Despite Milner's objections, the government was entitled to offer the statement at sentencing.  *United States v. Agyemong*, 876 F. 2d 1264, 1271 (7th Cir. 2012) (a sentencing judge may consider a wide variety of information that would be inadmissible at trial, including hearsay).   Milner did not succeed in convincing the court not to rely on this evidence, but he rendered effective assistance in trying to do so and in attempting to minimize its significance.

### 3. DNA evidence

Delgado contends that his counsel's lack of an argument about Sanchez's fingerprint being found on one of the packages of cocaine indicates counsel's ineffectiveness.  Delgado also argues that counsel should have asserted a lack of DNA evidence linking Delgado to the evidence.  These points do not suggest that Milner's actions were objectively unreasonable.  As a matter of strategy, Milner focused his attention on Sanchez's credibility.  This was a reasonable strategy.  As the Seventh Circuit concluded when Delgado raised a related point on appeal, the fact that Sanchez's fingerprint was found on one of the packages in no way suggested that the cocaine was not properly attributable to Delgado.

In sum, the Court concludes that Delgado has failed to show that his lawyer acted unreasonably in challenging the evidence connecting Delgado to the additional six kilograms of cocaine or that counsel's conduct possibly could have affected the sentence.  The Court therefore overrules Delgado's first ineffective assistance claim.

### Ground Two:  guilty plea and sentencing hearings

### 1. Delgado's statements under oath at the change of plea hearing

Delgado's second claim of ineffective assistance concerns his guilty plea.  He

alleges that he pled guilty because his counsel promised that he would receive a sentence of no more than 60 months.  To establish the prejudice component of a claim of ineffective assistance, Delgado must show that he would not have pled guilty absent the alleged promise.  *Hutchings v. United States*, 618 F. 3d 693, 697 (7th Cir. 2010); *Hill v. Lockhart*, 474 U.S. at 59.  Delgado does not even allege this, and he does not offer any facts to support a contention that he would not have pled guilty absent the supposed promise.

There is, however, a threshold flaw in Delgado's claim:  it is undermined by the events at the guilty plea hearing.  At the hearing, Delgado stated under oath that he had enough time to talk with his lawyer about the case and his decision to plead guilty.  Mar. 2, 2011 Tr. at 13.  He said that he was satisfied with the work that his attorney had done for him so far and had no problems at all with his legal representation.  *Id.* at 14.  More to the point, Delgado stated under oath that no one had promised him anything to get him to plead guilty or had tried to force, pressure, or threaten him to plead guilty.  *Id.* at 17.  Though Delgado does not address these statements in his motion, "statements made to a federal judge in open court are not trifles that defendants may elect to disregard."  *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999).  Delgado's sworn testimony under oath at the guilty plea hearing is presumed to be true, a presumption that is overcome only if he can satisfy a "heavy burden of persuasion." *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995) (internal quotation marks omitted).  Delgado has failed to overcome the presumption; in fact, he ignores his prior sworn testimony altogether.  Delgado's testimony at the plea hearing directly undermines his contention that he pled guilty based on a supposed promise from his

attorney of a sentence of no more than 60 months.

There is a further reason why Delgado's current claim that his lawyer made a promise that influenced his decision to plead guilty lacks merit. At the change of plea hearing, this Court specifically advised Delgado that if the government could show that he was responsible for the additional quantities that the government was alleging, then there would be a *mandatory minimum* sentence of ten years (120 months). Mar. 2, 2011 Tr. at 40. The Court also explained to Delgado that when there is a mandatory minimum sentence, the Court cannot impose a lower sentence. *Id.* at 26. Delgado specifically affirmed that he understood this possible shift in the mandatory minimum sentence. *Id* at 40. Given these circumstances, his contention that he relied on a promise by counsel of a lower sentence lacks merit.

## Conclusion

For the reasons stated above, the Court directs the Clerk to enter judgment denying Fernando Delgado-Cortes's motion to vacate his sentence.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 19, 2013